Filed 1/31/24  P. v. Roberts CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DESHAWN MARQUES ROBERTS,<br><br>Defendant and Appellant. | F085761<br><br>(Super. Ct. No. BF154248A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  John W. Lua, Judge.

James S. Thomson, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Detjen, J. and Meehan, J.

# INTRODUCTION

In 2015, appellant and defendant Deshawn Marques Roberts (defendant) was convicted after a jury trial of premeditated attempted murder and sentenced to life with the possibility of parole, plus 25 years to life for a firearm enhancement. The judgment was affirmed on direct appeal.

In 2022, defendant filed a petition for resentencing pursuant to Penal Code[1] section 1170.95[2] (now renumbered as § 1172.6). The trial court found he stated a prima facie case and issued an order to show cause. In 2023, the court conducted an evidentiary hearing, the parties submitted the matter on the trial transcript, and the court held the prosecution proved beyond a reasonable doubt that defendant still could be convicted of premeditated attempted murder after the amendments to sections 188 and 189.

On appeal, appellate counsel filed a brief that summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to both *People v. Delgadillo* (2022) 14 Cal.5th 216 and *People v. Wende* (1979) 25 Cal.3d 436. Defendant submitted a letter brief in response. We review his arguments and affirm the trial court's denial of his petition.

# FACTS[3]

"On the evening of April 2, 2014, a member of the Country Boy Crip criminal street gang was wounded in a drive-by shooting that took place in front of a market that was a well-known hangout of the gang. A witness described the vehicle from which the

---

[1]     All further statutory citations are to the Penal Code unless otherwise indicated.

[2]     Effective June 30, 2022, section 1170.95 was renumbered as section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We will refer to the current section 1172.6 in this opinion.

[3]     After notice to the parties and without objection, we take judicial notice of the records and nonpublished opinions in defendant's prior direct appeals, *People v. Roberts* (Jan. 4, 2018, F071777) and *People v. Roberts* (July 22, 2019, F077442 (*Roberts II*)), from which the following facts are taken.

shots were fired as a gray or silver Chevrolet Impala. Store video showed a silver vehicle drive by and turn the corner. Two minutes later, the car drove past again, the shooting occurred, and the car sped off. Three spent Winchester brand .40-caliber Smith and Wesson shell casings were found in the roadway adjacent to the victim's location when he was shot.

"The next day, police located the vehicle, which was being driven by defendant and which had been rented by his girlfriend. Two spent Winchester brand .40-caliber Smith and Wesson shell casings were found in the car. They and the three spent casings found at the scene of the shooting were determined to have been fired from the same gun.

"Under questioning by detectives, defendant first denied being involved in the shooting and said his vehicle was not there. He subsequently said his cousin, Marlon Burch, asked to use the car. Defendant was reluctant to give permission, but Burch grabbed the keys and left. Someone defendant knew as 'Maniac' got in the car with Burch. When Burch returned, he told defendant what had happened. Burch said he was the shooter, and that he went to a store in 'the country' and was aiming for 'anybody that was out there.' Eventually, defendant admitted he was the driver. He took Burch to where Burch got the gun, then Burch told him to go to the market. Once there, Burch fired several times. Defendant and Burch discussed what was going to happen before they went. Defendant 'just gave in' when Burch wanted to go do the shooting.

"At trial, defendant testified that Burch had taken defendant's car keys without defendant's permission, and that defendant did not know about the shooting until after it happened. In the portion of his interview with detectives that was video recorded, he admitted being the driver because he thought this was part of a plan hashed out off camera whereby defendant would involve himself as an eyewitness so police could arrest Burch, and defendant would be cited and released for being an unlicensed driver, a misdemeanor." (*Roberts II*, *supra*, F077442.)

## PROCEDURAL BACKGROUND

On May 4, 2015, after a jury trial, defendant was convicted of count 1, premeditated attempted murder (§§ 664, 187, subd. (a), 189), with an enhancement that a principal intentionally and personally discharged a firearm proximately causing great bodily injury (§ 12022.53, subds. (d) & (e)(1)), and a gang enhancement (§ 186.22, subd. (b)(1)); count 2, permitting the discharge of a firearm from a vehicle that he owned or drove (§ 26100, subd. (b)), with the gang enhancement; count 3, felon in possession of a firearm (§ 29800, subd. (a)(1)), with the gang enhancement; count 4, carrying a concealable firearm in a vehicle while an active participant in a criminal street gang (§ 25400, subd. (c)(3)), and count 5, active participant in a criminal street gang (§ 186.22, subd. (a)).

On June 2, 2015, defendant was sentenced to life with the possibility of parole with a minimum parole eligibility date of seven years for count 1, with a consecutive term of 25 years to life for the firearm enhancement. The court stayed the terms for the remaining convictions and enhancements.

**Direct Appeal**

In January 2018, this court filed the nonpublished opinion in defendant's direct appeal, *People v. Roberts*, *supra*, F071777, which affirmed the judgment but remanded the matter to the trial court to determine whether to exercise its discretion to dismiss the firearm enhancement pursuant to section 12022.53, subdivision (h), as amended after his conviction by Senate Bill No. 620 (Stats. 2017, ch. 682, § 2, eff. Jan. 1, 2018), and, if appropriate following exercise of that discretion, to resentence defendant.

**Remand for Resentencing**

At the hearing on remand, the trial court heard arguments from both parties as to whether to dismiss the section 12022.53, subdivision (d) enhancement that carried a consecutive term of 25 years to life. The court declined to exercise its discretion.

"The court stated that exercising its discretion whether to dismiss the firearm enhancement in the interest of justice meant it had to decide 'whether this is a just sentence for this particular crime such that the sentence previously imposed should stand or not.' It found the fact defendant was not the actual shooter something that arguably could be considered in defendant's favor. It acknowledged the victim did not die, although it did not give that fact much weight in mitigation, because at issue was the act of attempting to kill someone. In addition, the act in this case was found to have been committed with premeditation and deliberation, which, the court concluded, was supported by the evidence, particularly defendant's statement to detectives that he knew what he and Burch were going to do and he involved himself in the situation. Thus, the court found, there was some planning and preparation. The court did not recall there being a stop sign or stop light that defendant obeyed and that was when the shooting occurred; rather, the car drove by once before the shooting. With respect to defendant, the court found he had a minimal record at the time of the offense, with a juvenile offense for misdemeanor second degree burglary, then a felony drug conviction in 2008 for what now would be a misdemeanor. The court also observed defendant was 26 years old and a high school graduate. The court found those facts to be favorable to defendant.

"The court then stated:

" 'I guess what I'm struggling with the most … is whether or not actually [defendant] played a lesser or minor role in this particular incident. And I'm struggling with that idea in this particular case because ultimately this was going to be a drive-by shooting.

" 'Two people got together and this was what the plan was to go out and just shoot somebody for … apparently no other reason than a gang-related reason, … someone not belonging to the same gang. So drive-by shootings are … just horrible in the sense that people get killed. And a lot of times innocent people get killed that weren't even the intended amongst the target pool … of other gang members or whatever people that are just there get shot and get killed because of the nature of what a drive-by shooting is, which is essentially drive up on suspected people and start shooting, see who you could kill or hit somebody. So they are horrific crimes that have horrible, horrible results and that people get killed. I think most of the time … there is no reason for them whatsoever than some sort of gang-related reason, which is certainly not anything that would be mitigating .… But I do understand what takes place, and I think that was

5.

the motive here was the gang activity between the two gangs—the Eastside Crips and the … Country Boy Crips.

" 'So you can't have a drive-by shooting without a driver; a lot of times it is the same person. But when it is not the same person, essentially they're acting as one for purposes of committing the crime, and essentially that is what happened here. He's driving the car. He's driving it for the sole purpose of allowing somebody else to shoot willy nilly out at people and with obviously a likelihood somebody would get hit and somebody got killed, which is certainly what happened in this place; somebody was struck, and he didn't die. But it is a horrific, horrific crime which can only be accomplished … with a gun. The enhancement is designed to punish the crimes that are committed with firearms or [*sic*] severely then [*sic*] the crime itself. And in this case, based on the totality of the circumstances of the offense, [defendant's] participation, which obviously was necessary to accomplish the crime and knowledge of what was going to take place, I simply don't find that this would be a case where it would be appropriate for me to exercise my discretion and strike the enhancement.

" 'Consequently, in exercising my discretion, I'm deciding not to strike or dismiss the enhancement. The sentence previously imposed as to all the counts will stand. There will be no resentencing as a result of this [c]ourt's decision at this time.' " (*Roberts II*, *supra*, F077442.)

**Appeal after Resentencing**

Defendant filed an appeal from the trial court's decision not to dismiss the section 12022.53, subdivision (d) firearm enhancement, and argued the court abused its discretion. In 2019, this court filed the nonpublished opinion that held defendant's "selective quotations" from the record failed to demonstrate an abuse of discretion. "Defendant fails to persuade us that the trial court did not consider all relevant factors in reaching its decision. Rather, he simply presents information and argument from which a different conclusion reasonably could be drawn. That reasonable people might disagree or reach a conclusion contrary to that of the lower court does not mean that court abused its discretion. Because that court's ruling is neither arbitrary nor unreasonable, defendant is not entitled to a reversal." (*Roberts II*, *supra*, F077442.)

**DEFENDANT'S PETITION FOR RESENTENCING**

On February 22, 2022, defendant filed, in propria persona, a petition for resentencing pursuant to section 1172.6 and requested appointment of counsel. His supporting declaration consisted of a preprinted form where he checked boxes that stated (1) a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) he was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial at which he could have been convicted of murder or attempted murder; and (3) he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019. By interlineation, he circled the words "attempted murder" where they appeared in the preprinted declaration.

The court appointed counsel and set a briefing schedule.

On June 30, 2022, the People filed an opposition to the petition, and argued defendant was ineligible for resentencing because the instructions showed he was convicted based on his own intent to kill. The People requested the court take judicial notice of the nonpublished opinion from defendant's prior appeal (*Roberts II*, *supra*, F077442), and the entirety of the record from his jury trial. On August 19, 2022, defendant's counsel filed a reply.

**Order to Show Cause**

On October 24, 2022, the court found defendant's petition stated a prima facie case that he was entitled to resentencing, issued an order to show cause, set an evidentiary hearing, and provided for further briefing.

On February 3, 2023, defendant's counsel filed a hearing brief and argued the evidence showed he may have driven Burch to the location without sharing or knowing

7.

his intent to kill, and the jury could have convicted him of attempted murder based on an imputed malice theory. The People did not file a hearing brief.

## The Evidentiary Hearing

On February 10, 2023, the court held the evidentiary hearing. Defendant's counsel submitted the matter on his brief. The court asked the prosecutor if he filed opposition or would respond. The prosecutor moved to introduce the trial transcript into the evidentiary hearing, and argued section 1172.6 permitted the court to rely on that transcript and defendant had to raise objections if he wanted to exclude any testimony. Defendant's counsel acknowledged the trial transcript was admissible at the evidentiary hearing, but argued the victim failed to identify defendant as being in the car during the shooting.

The court granted the prosecutor's motion to admit the entirety of the transcript from defendant's jury trial. The prosecutor stated he did not intend to introduce any additional evidence and rested. Defendant's counsel also rested.

## The Court's Denial of the Petition

After hearing the parties' arguments, the court made lengthy findings and denied the petition. The court stated the facts from the trial were that "defendant admitted he was the driver; that he took Burch to where Burch got the gun, then Burch told him to go to the market. Once there, Burch fired several times. [Defendant] and Burch discussed what was going to happen before they went, ostensibly the shooting in particular." The court noted that defendant was not the actual shooter, and the People relied on an aiding and abetting theory, where the jury was instructed to determine "whether the defendant intended to aid and abet the perpetrator in committing the crime, shooting at persons in a specified location." The People also relied on an uncharged conspiracy theory, "where the jury was instructed to determine whether the defendant intended to agree and did agree with Marlon Burch to commit murder."

The court stated the People had the burden at the evidentiary hearing to "prove beyond a reasonable doubt that [defendant] is guilty of attempted murder under current California law, including the amendments to … [s]ections 188 and 189, which became effective on January [1], 2019."

"Based on the evidence presented during this hearing, this [c]ourt finds that the People have proven that [defendant] is guilty of attempted murder with deliberation and premeditation under the current law.  [¶]  Based on review of the jury instructions, the verdict forms, and transcripts from the trial, it is apparent to this [c]ourt that the [defendant] acted with an intent to kill when he aided and abetted Burch in committing the drive-by shooting that resulted in inflicting injury to a person.  [¶]  For this reason, this [c]ourt finds the [defendant] is ineligible for resentencing, and the conviction will stand."

On February 14, 2023, defendant filed a notice of appeal.

## DISCUSSION

As explained above, appellate counsel filed a brief with this court pursuant to *Wende* and *Delgadillo*.  The brief included counsel's declaration that defendant was advised he could file his own brief with this court.  This court also advised defendant that he could file a supplemental letter brief.  Defendant filed a letter brief and raises the following arguments.

### I.  Defendant's Contentions about his Trial and Sentence

Defendant requests this court to review the following issues:  to "look into the actual shooter," Burch, who was not questioned or charged with premeditated attempted murder; the evidence would show that Burch was the principal and not defendant; defendant was unfairly in prison for a crime committed by Burch; and the victim said he could identify the shooter but he was never shown a photographic lineup with Burch. Defendant also requests this court to "review" his three interviews with the investigating officers.

9.

Defendant's contentions are based on his jury trial and conviction, and are not cognizable in this appeal. "The mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings. To the contrary, '[n]othing in the language of section [1172.6] suggests it was intended to provide redress for allegedly erroneous prior factfinding .… The purpose of section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' " (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438.)

Next, defendant asks this court "to look into my sentence" of seven years to life plus 25 years to life. As set forth above, this court previously remanded the matter for the trial court to determine whether to dismiss the section 12022.53, subdivision (d) enhancement. The trial court declined to do so, we found the court did not abuse its discretion, that judgment is final, and the court's ruling at the resentencing hearing on remand similarly is not cognizable in this appeal from the denial of defendant's section 1172.6 petition.

Defendant also asks this court to address whether "there is any way I can [be] [resentenced] under [section] 1170.D [*sic*]." Defendant is presumably referring to section 1170, subdivision (d)(1)(A), which provides that a person who was under the age of 18 years at the time of the commission of an offense "for which the defendant was sentenced to imprisonment for life without the possibility of parole" and "has been incarcerated for at least 15 years," may submit "to the sentencing court a petition for recall and resentencing," where, under certain circumstances, the court may resentence the defendant. (§ 1170, subd. (d)(2), (6).)

Defendant did not file a petition under section 1170, subdivision (d) and he is not within its provisions because he was sentenced to life with the possibility of parole, and not life without the possibility of parole.

## II. The Trial Court's Denial of Defendant's Petition.

Defendant's letter brief also requests this court independently review the denial of his petition for resentencing.

## A. The Court's Determination at an Evidentiary Hearing.

As relevant to this case, section 1172.6, subdivision (a) states that a person convicted of "attempted murder under the natural and probable consequences doctrine" may file a petition with the court that sentenced the petitioner to have the petitioner's attempted murder conviction vacated and to be resentenced, where the petitioner "could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

"Once a petitioner establishes a prima facie case for relief and the superior court issues an order to show cause, the matter proceeds to an evidentiary hearing at which it is the prosecution's burden to prove beyond a reasonable doubt that the petitioner is ineligible for resentencing. [Citations.] If the superior court finds beyond a reasonable doubt that the petitioner is guilty of murder [or attempted murder] notwithstanding the amendments to sections 188 and 189, the petitioner is ineligible for relief under section 1172.6." (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951 (*Vargas*).)

"At the hearing to determine whether the petitioner is entitled to relief, … [t]he admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from

11.

the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule.  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."  (§ 1172.6, subd. (d)(3).)

At the evidentiary hearing, the trial court may make factual findings and credibility determinations, and weigh evidence.  (*People v. Harden* (2022) 81 Cal.App.5th 45, 51.)  "Although the parties may offer new or additional evidence to meet their respective burdens, section 1172.6, subdivision (d)(3) does not contemplate a whole new trial on all the elements of murder.  [Citation.]  Rather, '[t]he retroactive relief provided by [section 1172.6] is a legislative "act of lenity" intended to give defendants serving otherwise final sentences the benefit of ameliorative changes to applicable criminal laws and does not result in a new trial or increased punishment.'  [Citations.] Thus, the focus at the evidentiary hearing phase of an 1172.6 petition is 'on evidence made relevant by the amendments to the substantive definition of murder,' which, in the context of section 188, requires 'the prosecution to prove that all principals to a murder [or attempted murder] acted with malice aforethought.' "  (*Vargas*, *supra*, 84 Cal.App.5th at p. 952.)

"While the superior court acts as an independent fact finder in determining whether the People have met their burden, on appeal, the reviewing court applies the substantial evidence standard to the superior court's findings.  [Citation.]  Under this familiar standard, ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  [Citation.]  We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]  In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." '

[Citations.] Substantial evidence also ' "includes circumstantial evidence and any reasonable inferences drawn from that evidence." ' " (*Vargas*, *supra*, 84 Cal.App.5th at p. 951.)

"In conducting our substantial evidence review, we begin with the presumption that the evidence was sufficient to support the trial court's ruling. 'Before setting aside the judgment of the trial court for insufficiency of the evidence, it must clearly appear that there was no hypothesis whatever upon which there was substantial evidence to support the verdict.' " (*Vargas*, *supra*, 84 Cal.App.5th at p. 952.) "We must accept factual inferences in favor of the trial court's ruling. [Citation.] Where [a defendant] urges contrary and conflicting inferences, then, we must reject them." (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 591.)

## B. Analysis

The trial court's determination at the evidentiary hearing, that defendant could be convicted of premeditated attempted murder beyond a reasonable doubt under the amended statutes, is supported by substantial evidence. In making this determination, the court stated that it relied upon the transcript of defendant's jury trial, which was admissible under section 1172.6, subdivision (d)(3). In his pretrial interview, defendant initially claimed he was not in the car during the shooting, but later admitted he was driving the car, took Burch to the location where Burch got the gun, and then followed Burch's directions to drive to the market, where Burch fired multiple rounds. Defendant admitted that he discussed with Burch what was going to happen before they went. While defendant offered a different story at trial, there is substantial evidence to support the court's determination that defendant acted as a direct aider and abettor who acted with the intent to kill when he helped Burch procure the weapon and drove the vehicle during the drive-by shooting.

## DISPOSITION

The court's order of February 10, 2023, finding beyond a reasonable doubt that defendant was a direct aider and abettor of premeditated attempted murder, is supported by substantial evidence, and his petition was properly denied.